UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KIMBERLY ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2:16-cv-297-WTL-DKL |
| | ) |
| NATHAN ADAMS, ED MICHAELS, and | ) |
| RICK GRAVES, as COMMISSIONERS | ) |
| OF GREEN COUNTY, INDIANA, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

This cause is before the Court on the motion to dismiss filed by the Defendants (Dkt. No. 12). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion with regard to the Plaintiff's federal claim and **DISMISSES WITHOUT PREJUDICE** the Plaintiff's state law claims for the reasons set forth below.

### I.  STANDARD

The Defendants move to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Agnew*, 683 F.3d at 334 (citations omitted).  A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## II.     BACKGROUND

The Plaintiff, Kimberly Ross, has brought claims against the Defendants, Nathan Adams, Ed Michaels, and Rick Graves, as the Commissioners of Greene County, Indiana.  For the purposes of this motion, the Court accepts the following facts as true.

Ross was the chief deputy auditor in the Greene County Auditor's Office from January 3, 2011, until July 22, 2014.  She was employed by Greene County during this three-year period.  Ross regularly worked in excess of forty hours per week, but was not compensated for all overtime hours.  Her employment was terminated by the County in approximately July 2014.  At the time of her termination, Ross asserts that she was owed approximately $4,732.95 in unpaid wages.

## III.     DISCUSSION

Ross alleges that the Defendants willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") by failing to pay her minimum wages and overtime.  Ross contends that she was an employee and Greene County was an employer for the purposes of the FLSA.  In the alternative to her FLSA claim, Ross contends that the Defendants violated Indiana's Minimum Wage Law of 1965, Ind. Code § 22-2-9 *et seq.*, by failing to timely pay earned wages.  Ross further claims that the Defendants breached a contract of employment with her by failing to pay her wages and to comply with state and federal requirements to do so.

### A. <u>Fair Labor Standards Act Claim</u>

In the instant motion, the Defendants argue that Ross was not an employee for the purposes of the FLSA and, therefore, she cannot sue under the statute. Specifically, they argue that she was excluded from the definition of employee under the FLSA because she was in a policymaking position. Alternatively, they argue that she was excluded from the definition because she was a member of the personal staff of an elected official, or the county was not her employer.

The FLSA requires employers to pay a minimum wage to employees. 29 U.S.C. § 206(a). It also requires employers to pay an overtime wage to employees who work more than forty hours in a workweek. 29 U.S.C. § 207(a). The FLSA excludes certain individuals employed by a state, a political subdivision of a state, or an interstate governmental agency from its protections, including any individual:

> (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and
> (ii) who—
> > (I) holds a public elective office of that State, political subdivision, or agency,
> > (II) is selected by the holder of such an office to be a member of his personal staff,
> > (III) is appointed by such an officeholder to serve on a policymaking level,
> > (IV) is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office, or
> > (V) is an employee in the legislative branch or legislative body of that State, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or agency.

29 U.S.C. § 203(e)(2)(C).

The Defendants argue that Ross was not subject to any civil service laws because she served at the pleasure of the elected auditor. The Court agrees. In Indiana, the county auditor holds an elected, constitutional office. *See* Ind. Const. art. VI, § 2. Under Indiana law, the county auditor is entitled to appoint a chief deputy. Ind. Code § 36-2-16-4. The Indiana Court

3

of Appeals has held that "[county] [o]fficials are independently empowered to appoint and discharge their own deputies at their discretion." *Local 1963 of UAW v. Madison Cty.*, 999 N.E.2d 949, 957 (Ind. Ct. App. 2013). Because the position of deputy county auditor is one in which the county auditor may appoint or terminate an individual at his or her discretion, Ross was not an individual subject to any civil service laws.

The Defendants next contend that Ross was excluded from the definition of employee because her position falls within the "policymaking exception" under the statute. *See* 29 U.S.C. § 203(e)(2)(C)(ii)(III) (excluding any individual from FLSA coverage who is appointed by a public official "to serve on a policymaking level"). The Defendants' argument is based on the seminal decisions of the United States Supreme Court in *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980), establishing the inquiry for First Amendment patronage dismissal cases.

In *Elrod*, the Supreme Court held that patronage dismissals of public employees infringe First Amendment interests, but limitations or restraints on First Amendment rights are permitted for appropriate reasons. 427 U.S. at 360. The *Elrod* Court noted that although political loyalty is important in a representative government, this interest is "inadequate to validate patronage wholesale." *Id.* at 367. The Court struck a balance by "[l]imiting patronage dismissals to policymaking positions." *Id.* However, the Court noted that "no clear line can be drawn between policymaking and nonpolicymaking positions." *Id.* The Court provided that policymaking positions are those "with responsibilities that are not well defined or are of broad scope" and stated that "consideration would also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id.* at 368. The *Elrod* decision now stands for the proposition "that party affiliation may be an acceptable requirement for some types of government employment." *Branti*, 445 U.S. at 517.

In *Branti*, the Court altered the analysis for the policymaking exception provided in *Elrod*. The *Branti* Court recognized that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular person; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518.

The Seventh Circuit has further refined the inquiry to whether "the position authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Davis v. Ockomon*, 668 F.3d 473, 477 (7th Cir. 2012) (quoting *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005)). To make this determination, a court must consider factors such as whether an employee's responsibilities "are not well defined or are of broad scope" and whether an employee "acts as an adviser or formulates plans for the implementation of broad goals." *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999) (quoting *Elrod*, 427 U.S. at 368). Although the Supreme Court in *Branti* abandoned the use of the terms "policymaker" and confidential" to describe the positions excepted in patronage dismissal cases, the Seventh Circuit has found that these labels "accurately describe the vast majority of offices that fall within the realm of legitimate patronage under the *Branti* formulation." *Davis*, 668 F.3d at 477 (quoting *Kiddy–Brown*, 408 F.3d at 355).

Furthermore, the Seventh Circuit has emphasized that *Elrod* and *Branti* "require an examination of the powers inherent in a given office, rather than the actual functions performed by the current occupant of that office." *Kline v. Hughes*, 131 F.3d 708, 710 (7th Cir. 1997) (citation and internal quotation marks omitted). "Therefore, even if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that

5

render his political affiliation an appropriate prerequisite for effective performance." *Kiddy-Brown*, 408 F.3d at 355 (citation and internal quotation marks omitted). The rationale behind focusing the analysis on the inherent powers in an office is to "provide[ ] greater certainty to litigants and relieve[ ] courts of the burden of having to re-examine a certain position every time a new administration changes the mix of responsibilities bestowed upon the officeholder." *Davis*, 668 F.3d at 478 (citation and internal quotation marks omitted).

Although discretion is also an important factor, the Seventh Circuit has recognized that "[a]lmost all jobs in government require individuals to exercise at least some level of discretion, resulting in somewhat arbitrary line-drawing based on how much discretion is authorized," and "positions requiring the exercise of professional rather than political discretion do not properly fall within the policymaker exception." *Davis*, 668 F.3d at 477 (citations and internal quotation marks omitted). "Thus, both the amount and type of discretion authorized are relevant." *Id.* at 477-78. "Ultimately, a defendant bears the burden of establishing that a plaintiff's position falls within the exception to the general prohibition on patronage dismissal." *Kiddy-Brown*, 408 F.3d at 346.

The Seventh Circuit has broadly applied the policymaking exception to ADEA and Title VII cases in addition to First Amendment political patronage cases. *See Opp v. Office of State's Attorney of Cook Cty.*, 630 F.3d 616, 620 (7th Cir. 2010) (ADEA); *Americanos v. Carter*, 74 F.3d 138, 144 (7th Cir. 1996) (First Amendment, ADEA, and Title VII); *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993) (ADEA); *Pleva*, 195 F.3d at 917 (First Amendment and ADEA); *see also Americanos*, 74 F.3d at 144 (quoting *Heck*, 985 F.2d at 310) ("[T]he reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA [and Title VII]."). In using a single test, this Circuit has declined "to

draw a distinction between how aggrieved individuals are interpreted as policymakers under the First Amendment and under the ADEA [and Title VII]." *Opp*, 630 F.3d at 620.

In the instant case, the Plaintiff makes no argument as to why the context of the FLSA is any different from that of the First Amendment or the anti-discrimination statutes.[1] In fact, the policymaking exception in the definition of employee under the FLSA is nearly identical to the same exception within the ADEA and Title VII. *Compare* 29 U.S.C. § 203(e)(2)(C)(ii)(III) *with* 29 U.S.C. § 630(f) and 42 U.S.C. § 2000e(f). Therefore, the Court will apply the Seventh Circuit's inquiry with regard to the policymaking exception contained in the FLSA. *Cf. Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151, 161 (6th Cir. 2004) (noting that courts have interpreted the FLSA's policymaking exception consistently with its Title VII counterpart).

Generally, the question of whether a position is excluded as policymaking "is a factual one that should ordinarily be left for a jury to determine." *Pleva*, 195 F.3d at 912 (citations omitted). However, the policymaking determination "may be done without the aid of a finder of fact when the duties and responsibilities of a particular position are clearly defined by law and regulations." *Opp*, 630 F.3d at 621 (citation omitted). The Seventh Circuit has articulated that the inquiry should begin by focusing on any state statutes or city ordinances that define the duties of the position in question. *See Davis*, 668 F.3d at 478 ("[W]e focus our attention on the City ordinances in effect at the time of [the plaintiff's] termination, which define by law the duties of

---

[1] In fact, the Plaintiff fails to respond entirely in her Brief in Opposition to Defendants' Motion to Dismiss (Dkt. No. 16) to the Defendants' arguments presented in the Defendants' Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 13). Instead, Ross devotes her response to arguing that she is a non-exempt employee entitled to overtime and compensatory time for the purposes of the FLSA. As the Defendants note in their Reply Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 17), the issue of whether an employee is exempt or non-exempt under the FLSA is an issue separate from whether an individual is excluded under the definition of employee for FLSA purposes. *Compare* 29 U.S.C. § 213 (FLSA exemptions) *with* 29 U.S.C. § 203(e)(1) (FLSA employee definition). Regardless, the Defendants point out that they do not concede that Ross' position was non-exempt. Dkt. No. 17 at 2 n.2.

the [Senior Humane Officer]."); *Pleva*, 195 F.3d at 912 ("Because [the plaintiff's] position . . . was clearly defined by state statute and city ordinance, we find that the district court's determination as a matter of law of the policymaking status of [the plaintiff's] position was proper.").

Here, the position in question is the chief deputy auditor of Greene County, which Ross formerly held. Under Indiana law, a deputy auditor "shall take the oath required of the [county auditor]." Ind. Code § 36-2-16-2(b). The deputy "may perform all the official duties of the [county auditor] and is subject to the same regulations and penalties as the officer." Ind. Code § 36-2-16-3(a). In addition, the county auditor "is responsible for all the official acts of the deputy." Ind. Code § 36-2-16-3(b). The Indiana Supreme Court has even acknowledged that "[a] deputy auditor . . . is more than a clerk or an employee; he is vested with the power, by express statute, to perform all duties of the auditor, and public policy requires that this should be so. He is essentially a public officer and discharges functions of government, under express statutory direction." *Wells v. State*, 94 N.E. 321, 323 (Ind. 1911).

In *Kline*, the Seventh Circuit addressed an analogous situation in affirming the district court's determination that, under Indiana law, a deputy county auditor was a policymaking position, thus barring the plaintiff's First Amendment claim. 131 F.3d at 710. Because "[u]nder Indiana law, a deputy county auditor may perform all the official duties of the county auditor" and "the county auditor is responsible for all the official acts of the deputy," the *Kline* Court determined that this "arrangement makes clear that the office of deputy auditor plays a vital role in the implementation of the county auditor's policies." *Id.* The Court concluded that "this statutory scheme places the deputy county auditor in a position that carries with it the inherent ability to have 'meaningful input into governmental decisionmaking on issues where there is

8

room for principled disagreement on goals or their implementation.'" *Id.* (quoting *Americanos*, 74 F.3d at 141).

Because the duties and inherent powers of a deputy county auditor are clearly defined by Indiana law, a deputy auditor of Greene County falls within the FLSA's policymaking exception. As such, the Court finds that Ross, as a chief deputy auditor, held a policymaking position and, therefore, is not covered by the scope of the FLSA as a matter of law. Accordingly, the Defendants' motion to dismiss is **GRANTED** as to the Plaintiff's federal claim under the FLSA.

### B. State Law Claims

The only remaining claims are the Plaintiff's state law claims under Indiana's Minimum Wage Law and for breach of contract. The Court's jurisdiction over these claims is based upon 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over claims based on state law that are closely related to the federal claim(s) in a case. However, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* (citations and internal quotation marks omitted). The Seventh Circuit has identified certain circumstances that may displace the presumption, namely:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (citation omitted). Because it does not appear that any of these exceptions apply here, the Court declines to exercise supplemental jurisdiction over the state law claims asserted in the Plaintiff's Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss (Dkt. No. 12) is **GRANTED** as to the Plaintiff's federal claim. Ordinarily, a plaintiff is given an opportunity to file an amended complaint that corrects the deficiencies in the current complaint before judgment is issued. *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.") (quotation marks and citation omitted). Such an opportunity, however, is not provided where "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Id.* Here, Ross's federal claim fails as a matter of law; any amendment would be futile because there is no possible set of facts that would state a claim under then FLSA. Accordingly, the Court will enter judgment as to the Plaintiff's federal claim. The Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims; accordingly, those claims are **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED: 7/18/2017

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.